EMILIO M. GARZA, Circuit Judge,
concurring:
I concur in the majority opinion in full. I write separately to address the conflict of interest concerns mentioned, but discussed only briefly, in Section II.B.
The Government presents the special standards to which federal employees are held concerning potential conflicts of interest, all of which may, in some way, be implicated by our decision today. First, federal employees who file qui tam actions like the one at issue in this case are now, on a plain reading of 18 U.S.C. § 208, potentially criminally liable. Section 18 provides that:
whoever, being an officer or employee ... of any independent agency of the United States ... participates personally and substantially as a Government officer or employee ... in a judicial or other proceeding ... in which, to his knowledge, he ... has a financial interest ... [s]hall be subject to the penalties set forth in section 216 of this title.
This provision ostensibly applies to the federal government employee who flies a qui tam action, a “judicial [ ] proceeding” in which he or she necessarily “has a financial interest.” This imposition of criminal *295 liability is rooted in a desire for impartial judgment on the part of federal employees, and it takes no leap of logic to conclude that the judgment of an auditor, faced with potential violations which also come under the purview of the FCA, may be impaired. See United States v. Miss. Valley Generating Co., 364 U.S. 520, 549, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961).
Second, the Code of Federal Regulations prohibits government employees from using “nonpublic Government information” to further their private interests, 5 C.F.R. §§ 2635.101(b)(3), 2635.703(a), from participating in any matter in which they have a financial interest, id. §§ 2635.402, 2635.501, 2635.502, and from using government property or time for personal purposes, id. §§ 2635.704, 2635.705. The government employee who files an FCA claim based on “nonpublic Government information” obtained in the course of his or her duties as an auditor arguably does so to further private interests, arguably participates in a matter in which he or she has a financial interest, and arguably uses government property or time to further private interests.
Third, federal auditors are held to an even higher standard than other government employees. Chapter 3.03 of the Government Accountability Office’s Generally Accepted Government Auditing Standards (“The Yellow Book”) provides that all auditors “should be free both in fact and appearance from personal, external, and organizational impediments to their independence. Similarly, Chapter 3.04 of The Yellow Book exhorts auditors to avoid situations that may lead reasonable third parties to conclude that they are unable to maintain independence or exercise impartial judgment on all issues associated with their work. Our construction of the FCA today will implicate all of these mandates.
That said, we are charged as judges with interpreting statutes as written, and, insofar as they do not interfere with the well-recognized canons of construction discussed by the majority, the tension now left between the FCA and the aforementioned conflict-of-interest principles is a matter of political concern. Congress gives standing under the FCA to all “persons,” with certain explicit exceptions not implicated in this case, and has written the FCA in such a way as to give no notice to the conflict of interest principles discussed in section 208, the CFR, or The Yellow Book. Whether Congress has acted wisely in granting standing to a “person” who may be criminally or professionally hable for filing suit is not for us to say.